IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BENJAMIN VAYNSHELBOYM,                    :
                                          :     CIVIL ACTION
          Plaintiff,                      :     NO. 20-2690
                                          :
     v.                                   :
                                          :
COMHAR, INC.,                             :
                                          :
          Defendant.                      :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          September 27, 2021


          Presently before the Court is the motion for summary

judgment filed by Defendant, COMHAR, Inc. Plaintiff, Benjamin

Vaynshelboym, currently asserts claims against Defendant for:

(1) religious discrimination; (2) retaliation; and (3) failure

to accommodate religious beliefs, all pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.[1] For the

reasons that follow, the Court will grant Defendant's motion.

---

[1]        In addition, Plaintiff pleaded four counts related to
Defendant's alleged failure to pay overtime wages pursuant to
the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and the
Pennsylvania Minimum Wage Act, 42 P.S. § 333.101, et seq. See
Cmplt., Counts IV-VII (ECF No. 1, pp. 31-36). Plaintiff has
failed to present any facts disputing Defendant's arguments
against these counts. As a result, the Court will consider the
facts raised by Defendant as "undisputed for purposes of the
motion." Fed. R. Civ. P. 56(e)(2). After considering Defendant's
undisputed facts, the Court concludes that summary judgment on
these counts is appropriate as there are no genuine disputes as
to material facts regarding them.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]**

        Plaintiff is a licensed practical nurse ("LPN"). He practices the Jewish religion and tries to observe Shabbat, the Jewish day of rest lasting approximately from sundown on Friday through nightfall on Saturday. Defendant operates several long-term structured residences and is required by regulation to have at least one licensed medical professional on all shifts at its facilities. Defendant hired Plaintiff to work in one of its residential facilities as an LPN in January 2014 on a per diem basis. In February 2014, Defendant offered Plaintiff a full-time LPN position. Plaintiff believed that the shift would be from Sunday through Thursday, but ultimately, he agreed to work the Tuesday through Saturday shift. This shift required Plaintiff to work on Shabbat.

        In March 2014, Plaintiff requested a religious accommodation to avoid working on Saturdays. Plaintiff's supervisor, Bernadette Gaumer, told Plaintiff that the shift could not be changed at that time but that he could request a schedule modification after six months. Plaintiff orally began requesting a religious accommodation again after the six months.

        On June 24, 2015, Plaintiff met with Shaniya Selden-Graham who succeeded Gaumer as his supervisor. Plaintiff and

---

[2]        The Court views the facts in the light most favorable to Plaintiff, the non-moving party in this case.

Selden-Graham discussed changing his schedule to Monday through Friday to accommodate Plaintiff's religious beliefs. Plaintiff's request was ultimately denied by management due to program requirements. Plaintiff notes that on March 28, 2016, Defendant did grant on a temporary basis a schedule change for Sandra Gant, another nurse at Plaintiff's facility, who requested to work a shift that was already available.

On May 18, 2016, Plaintiff filed a Charge of Discrimination with the EEOC and PHRC based on religion and national origin and noted, inter alia, that Defendant had not allowed him to change his work schedule to accommodate his religious beliefs. On November 22, 2016, the EEOC dismissed this charge and issued Plaintiff a right to sue notice. Plaintiff did not pursue the allegations because in June 2016, Selden-Graham agreed that he could use accrued personal, sick, holiday, and vacation time to take off Saturdays to accommodate him.

Plaintiff's accommodation lasted until September 2018 when Colleen Thomas-Philip, the program director of Plaintiff's facility,[3] stopped approving Plaintiff's requests for Saturdays off. Plaintiff explained why he needed the time off, but Thomas-Philip told Plaintiff Defendant would no longer accommodate Plaintiff because there was not another available LPN who could

---

[3]     Thomas-Philip became the program director on November 6, 2017.

work that shift. Nonetheless, Plaintiff continued to take some
Saturdays off and did not work ten Saturday shifts between
September 29, 2018 and February 29, 2019.

On January 11, 2019, Thomas-Philip issued a verbal
warning to Plaintiff for establishing "a pattern of calling out
excessively from work." Pl. Ex. 5 (ECF No. 37-2 p. 454). Thomas-
Philip listed the twenty-seven dates with which she was
concerned, which included roughly two-thirds Fridays and
Saturdays, and one-third Wednesdays and Thursdays. Id.

On February 5, 2019, Thomas-Philip issued Plaintiff a
"general communication" after he requested off the next five
Saturdays. She provided that "failure to work your required
hours on a consistent basis puts a strain on the program." Pl
Ex. 7 (ECF No. 37-2 p. 460). Thomas-Philip also stated that
"while all efforts will be made to try to accommodate requests,
that not all of them will be accommodated due to program needs
at the time." Id.

On March 14, 2019, Plaintiff filed a second charge of
religious discrimination with the EEOC and PHRC alleging that
his requests for leave were being denied because he was Jewish
and that other employees outside of his protected class had been
allowed to take leave.

On March 15 and 22, 2019, Plaintiff met with Jim
Geier, Defendant's human resources director, and Trapeta Mayson,

the chief program officer, to discuss accommodations. In a March

22, 2019 email, Mayson memorialized the meetings and summarized

that, "since you have stated that your requests for

accommodations (asking for consecutive Fridays off work when the

shift you were hired to work is Monday-Friday) based on

religious reasons were denied, COMHAR has to make a business

decision about such requests." Pl. Ex. 10 (ECF No. 37-2 p. 466).

The email continued that:

> due to business reasons (COMHAR operates three shifts at
> the LTSR and the Monday-Friday shift you currently work
> is one of them, COMHAR has to maintain staffing ratios
> based on the needs of the program and the residents and
> COMHAR has to ensure that all staff are available and
> present at work at the appointed time), we cannot and
> will not approve consecutive Fridays off or approve
> leave time that hasn't been earned.

Id. The email also provided that "COMHAR understands if a

particular arrangement doesn't work for an employee anymore and

ultimately, it is your choice to decide if the Monday-Friday

schedule still works for you since it won't be changing anytime

in the near future." Id.

On March 26, 2019, Jessmay Rayes, another LPN who

worked with Plaintiff, reported that a tablet of the narcotic

Lorazepam was missing from its blister pack at the start of her

shift at 8:00 a.m. Plaintiff had worked the previous shift and

was still on site when Reyes reported the missing tablet. The

inventory count sheet for March 26, 2019 indicated that

Plaintiff dispensed Lorazepam to a resident at 7:00 a.m.,

5

shortly before the end of his shift. He also indicated on the sheet that there were three tablets left after dispensing the tablet at 7:00 a.m. However, at the start of her shift, Reyes counted only two tablets. Plaintiff began looking for the tablet, but Thomas-Philip, the program director, told him to stop since his shift was over, and to fill out an incident report, which he did.

The next day on March 27, 2019, when Plaintiff started his shift, he quickly found the missing tablet in a medication bin in the closet in which narcotics are locked. Plaintiff told Reyes and another nurse, Tiffany Ellerbee, that he had recovered the missing tablet. Plaintiff then returned the tablet to the blister pack, circling its location. Plaintiff, in the presence of Reyes and Ellerbee, altered Reyes' March 26, 2019 inventory sheet notation, striking the number 2, and adding the number 3 to indicate that three instead of two tablets were counted. Plaintiff then emailed Thomas-Philip explaining that he had found the tablet but he did not inform her that he had altered Reyes' entry on the inventory sheet.

Thomas-Philip reported the incident to Lamar Brooks, Defendant's director of compliance. Brooks launched a formal investigation, suspending Plaintiff without pay effective March 29, 2019, pending its outcome. Brooks reviewed the evidence,

obtained statements from witnesses, and interviewed Plaintiff.

He ultimately concluded that Plaintiff:

> tampered with the medication log. Mr. Vaynshelboym
> incorrectly documented the medication count by not
> accounting for the missing medication on 3/26/19 which
> took place on his shift and he subsequently completed an
> incident report for the missing Lorazepam tablet. Mr.
> Vaynshelboym was also fraudulent in his actions to alter
> Jessmay Reyes medication count entry on 3/26/19 at 8am.
> By altering Ms. Reyes entry Mr. Vaynshelboym falsified
> an entry. Falsification of documentation can be grounds
> for immediate dismissal.

Pl. Ex. 19 (ECF No. 37-2 p. 488). Brooks recommended that

Plaintiff "be subject to disciplinary action up to and including

termination for falsifying records." Id.

Defendant claims that at this time, Brooks had not

personally interacted with Plaintiff and had not known that

Plaintiff had lodged any internal or external discrimination

complaints. Plaintiff has not produced evidence directly

contrary to this assertion, but does note that Brooks also

testified he had heard Plaintiff's name mentioned by previous

management who indicated that they thought he was difficult to

work with and that he sometimes did not want to follow

directives.

Plaintiff notes that in emails between Thomas-Philip,

Brooks, and Mayson, they appeared suspicious of Plaintiff's

actions. For example, Brooks stated "I'd like to know how this

missing meds [sic] miraculously appeared. And how Ben was the

person to find it. Something doesn't sound right . . ." Pl. Ex.

21 (ECF No. 37-1 p. 499). Catina Anastasiadis, the division

director for intensive behavioral services, and Thomas-Philip

also stated in the emails that they had questions about the

situation and Thomas-Philip stated that "[t]his whole situation

is off. He put the pill back in the blister pack and taped it,"

and she indicated that the tablet should have been destroyed

rather than replaced. Id. at 502. Anastasiadis wrote that

Plaintiff replacing the tablet in the packaging rather than

destroying it and changing Reyes' entry on the inventory sheet

were "against nursing practice and protocol." Pl. Ex. 22 (ECF

No. 37-2 p. 508). Anastasiadis continued that:

> [t]his incident is extremely concerning for multiple
> reasons, Mr. Vanynshelboym disregarded "standard nursing
> practice" when it came to a missing narcotic, he did not
> follow policy when it comes to reporting incidents and
> he altered another nurses [sic] documentation. I believe
> this incident warrants serious disciplinary actions and
> I am recommending termination. I am aware that there are
> other factors involving Mr. Vanynshelboym that are
> ongoing and predate my involvement with the [facility]
> for I am deferring to Rim [sic] and Jim for suggestion
> of next steps to address Mr. Vanynshelboym's incident.

Id.

On April 25, 2019, after Brooks met with Geier (the human

resources director) and Mayson (the chief program officer), and

with input from Thomas-Philip (the program director) and

Anastasiadis (division director for intensive behavioral

services), Geier advised Plaintiff that he was terminated

effective April 26, 2019 for falsifying documents.

Brooks asserted that he was familiar with other incidents where employees were terminated for falsifying business records. However, Plaintiff notes that on April 20, 2015, Plaintiff informed Defendant that Gant (a nurse) had administered a vial of Lorazepam but failed to document it in the narcotic count sheet. Similarly, Plaintiff reported that between May and August 20, 2018, other LPNs, including Reyes, created universal entries in residents' medical records before the medical care was actually administered. To Plaintiff's knowledge, these incidents did not result in any disciplinary measures.

On August 6, 2019, Plaintiff filed a third charge of discrimination against Defendant, claiming that it unlawfully denied his requests for religious accommodation and terminated his employment in retaliation for filing discrimination charges. Plaintiff filed the current action on June 8, 2020, and Defendant filed the pending motion for summary judgment on January 22, 2021.

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v.

Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A

fact is material if proof of its existence "might affect the

outcome of the suit," and a dispute is genuine if "the evidence

is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson, 477 U.S. at 248.

    The Court views the facts "in the light most favorable

to the nonmoving party." Am. Eagle Outfitters, 584 F.3d at 581.

"After making all reasonable inferences in the nonmoving party's

favor, there is a genuine issue of material fact if a reasonable

jury could find for the nonmoving party." Pignataro v. Port

Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While

the moving party bears the initial burden of showing the absence

of a genuine issue of material fact, meeting this obligation

shifts the burden to the nonmoving party who "must set forth

specific facts showing that there is a genuine issue for trial."

Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

**III. DISCUSSION**

    Plaintiff alleges that Defendant violated Title VII by

discriminating against him on the basis of his religion,

retaliating against him for his discrimination complaints, and

by failing to accommodate his religious beliefs.

    **A.    Title VII Discrimination and Retaliation**

Given that Plaintiff's discrimination and retaliation claims rely on indirect evidence, their analyses follow the familiar McDonnell Douglas burden-shifting analysis under which: (1) a plaintiff must first show a prima facie case; (2) the defendant must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection"; and (3) then the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination" or retaliation. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (regarding disparate treatment discrimination) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015) (regarding retaliation). "The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" Atkinson v. LaFayette Coll., 460 F.3d 447, 454 (3d Cir. 2006) (quoting Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997)).

For the purposes of this decision, the Court will assume that Plaintiff has made a prima facie case of both

religious discrimination and retaliation.[4] Ultimately, the issue

is whether the Defendant's stated reason for terminating

Plaintiff, i.e., that Plaintiff falsified documents in

connection with the missing narcotic tablet that he later

recovered, is pretext and could not have possibly been

Defendant's real reason. Atkinson, 460 F.3d at 454.

Plaintiff essentially claims that Defendant's reason

is pretext for religious discrimination and retaliation because

he believes he was transparent in his actions and took

reasonable steps once he recovered the missing tablet. Plaintiff

also argues that: (1) Defendant failed to provide evidence that

other employees were terminated for changing the narcotic count

to reflect a found tablet; and (2) that it failed to produce a

written policy regarding documenting narcotics counts that

Plaintiff expressly violated. Finally, Plaintiff contends that

the fact that his managers were immediately suspicious of his

actions tends to show discriminatory and retaliatory intent.

---

[4]     For a prima facie case of religious discrimination, a
plaintiff must show: (1) that he or she is a member of a
protected class; (2) that he or she is qualified for the
position; and (3) that he or she was fired from that position;
(4) under circumstances that give rise to an inference of
unlawful discrimination. Jones, 198 F.3d at 410-11. For a prima
facie case of retaliation, a plaintiff must show: (1) that he or
she engaged in a protected employee activity; (2) an adverse
action by the employer; and (3) a causal connection between the
protected activity and the adverse action. Daniels, 776 F.3d at
193.

First, Plaintiff's "view of his performance is not at issue; what matters is the perception of the decision maker." Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991), overruled in part on other grounds by St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). In this case, the evidence shows that Plaintiff's supervisors' "suspicions" were grounded on what they justifiably believed were the unusual circumstances regarding the temporary disappearance and sudden reappearance of the missing narcotic. Under these circumstances, it was reasonable to expect that legitimate concerns would be raised when the supervisors believed regular procedure was not followed in the handling of and accounting for narcotics. Moreover, the supervisors' concern about the missing narcotics was augmented by the fact that the resident for whom the narcotic was prescribed was mostly non-verbal and could not communicate whether she had received her medication. See Anastasiadis Dec. ¶ 15; ECF No. 35-22 at 7.

Second, Plaintiff fails to discredit Defendant's stated reason for his termination, i.e. the falsification of Reyes' narcotics inventory sheet entry. The evidence shows that Plaintiff's supervisors found his actions regarding the missing tablet very suspicious, which was unrelated to any discrimination or retaliation. Indeed, the evidence shows that Brooks, the director of compliance who investigated the incident

13

and recommended Plaintiff be terminated, did not know of
Plaintiff's previous discrimination complaints and was only
aware generally that some previous management personnel found
Plaintiff difficult to work with.

Plaintiff points to alleged comparators which he
claims, without pointing to any supporting documentation, were
not disciplined for similar conduct. These examples include that
another nurse (Gant) in 2015 allegedly administered a vial of
Lorazepam but failed to document it in the narcotic count sheet,
and that on various occasions in 2018 other LPNs allegedly pre-
filled residents' medical records before the medical care was
administered. To the extent that Plaintiff's alleged comparators
factor into whether the Defendant's stated reason was
pretextual, the Court notes that the facts and circumstances of
these alleged incidents are different from the incident with
Plaintiff. For example, the 2015 incident involved different
supervisors and it is not clear from Plaintiff's evidence that
the LPN's conduct in 2018 was wrongful. Moreover, neither
incident involved changing critical narcotics records that had
been made by another LPN.

Since no reasonable jury could find that Plaintiff's
falsification of documents could not have been the real reason
he was terminated, summary judgment on the claims for religious
discrimination and retaliation is appropriate.

### B.    Title VII Failure to Accommodate

To establish a prima facie case of a failure to
accommodate religious practice, "the employee must show: (1) she
holds a sincere religious belief that conflicts with a job
requirement; (2) she informed her employer of the conflict; and
(3) she was disciplined for failing to comply with the
conflicting requirement." E.E.O.C. v. GEO Grp., Inc., 616 F.3d
265, 271 (3d Cir. 2010) (quoting Webb v. City of Philadelphia,
562 F.3d 256, 259 (3d Cir. 2009)).

"[T]he burden [then] shifts to the employer to show
either [1] it made a good-faith effort to reasonably accommodate
the religious belief, or [2] such an accommodation would work an
undue hardship upon the employer and its business." Id. (quoting
Webb, 562 F.3d at 259).

Defendant claims Plaintiff has failed meet the third
prong of the prima facie test because there was no actual
discipline that arose from Plaintiff's failure to work on
Fridays and Saturdays. Plaintiff contends that he was
disciplined twice for requesting Fridays or Saturdays off when
he was issued the verbal warning on January 11, 2019 and the
"general communication" on February 5, 2019.

Defendant claims that because neither warning amounted
to an "adverse employment action," they do not amount to
"discipline" for the purposes of a failure to accommodate claim.

15

Courts in this circuit have equated "discipline" with "adverse

employment actions," thus requiring the plaintiff to show

discipline "that is serious and tangible enough to alter an

employee's compensation, terms, conditions, or privileges of

employment." Mohammed v. Schneider Nat'l Carriers, Inc., No. CV

18-0642, 2018 WL 5634897, at *2 (W.D. Pa. Oct. 12, 2018), report

and recommendation adopted, No. 2:18-CV-00642, 2018 WL 5633994

(W.D. Pa. Oct. 31, 2018) (quoting Brown v. Vanguard Grp., Inc.,

No. CV 16-946, 2017 WL 412802, at *11 (E.D. Pa. Jan. 30, 2017)).

        Plaintiff claims that because both disciplinary memos

contained form language at the end of the communication

indicating Plaintiff could face further disciplinary actions or

termination in the future for failing to comply, Defendant

"altered the terms and conditions of Plaintiff's employment by

stripping him of any rights to practice his religion while

employed by" Defendant. Pl. Resp. (ECF No. 37-1 p. 35).

        Neither of these warnings changed the terms and

conditions of Plaintiff's employment. "[U]nrealized threats will

not satisfy the third prong of the prima facie case for failure

to accommodate." Mohammed, 2018 WL 5634897, at *4; see also

Bowles v. New York City Transit Auth., 285 F. App'x 812, 814 (2d

Cir. 2008) (providing that an employer's "comment that [Bowles]

should seek a job in the private sector if he wanted weekends

off," was "insufficient to establish the third prong of Bowles's

16

prima facie case" because he could not show the "remarks ever
ripened into any further action—let alone any action adversely
affecting 'the terms and conditions of [Bowles's] employment'")
(quoting Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d
Cir. 2006)). Therefore, the warnings are insufficient to satisfy
step three of a prima face case of a failure to accommodate
religious beliefs, i.e., that the plaintiff was disciplined for
failing to comply with the conflicting requirement.

    Even if Plaintiff had met his initial burden, the
Court concludes that Defendant has shown that Plaintiff's
requested accommodation would work upon it an undue hardship.
Plaintiff sought to either take Saturdays off or be assigned to
another shift that did not include Saturdays. Defendant has
shown that allowing Plaintiff to take off Saturdays created a
financial hardship because other nurses were needed to cover the
shifts for which Plaintiff was absent, often resulting in over-
time pay. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63,
84 (1977) ("To require TWA to bear more than a de minimis cost
in order to give Hardison Saturdays off is an undue hardship.");
Webb, 562 F.3d at 259-60 ("An accommodation constitutes an
'undue hardship' if it would impose more than a de minimis cost
on the employer."). Defendant has also shown that a non-Saturday
schedule could not be made available to Plaintiff without
causing an undue burden on Defendant. As a result, summary

17

judgment is warranted on Plaintiff's failure to accommodate
claim.

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant
Defendant's motion for summary judgment, entering judgment in
its favor and against Plaintiff.

An appropriate order follows.